UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALFONSO IGNACIO VIGGERS,

    Plaintiff,

vs.                                                          Case No. 16-10263

BOARD OF REGENTS OF THE                        HON. AVERN COHN
UNIVERSITY OF MICHIGAN and
DOE DEFENDANTS.

_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
## (Doc. 5)
## AND DISMISSING CASE[1]

I. Introduction

This appears to be an employment dispute.  Plaintiff, proceeding pro se, is suing defendants the Board of Regents of the University of Michigan and "Doe Defendants." He makes nine claims, as follows:

    Count I - violation of section 1983 (First Amendment Retaliation)
    Count II - violation of section 1983 (14th Amendment Procedural Due Process)
    Count III - Breach of contract
    Count IV - Violations of the Fair Credit Reporting Act
    Count V - 18 U.S.C. § 241 (criminal conspiracy) and section 1985(3) (civil conspiracy)
    Count VI - 18 U.S.C. § 401 and § 1001 - Contempt of Court
    Count VII - Promissory Estoppel
    Count VIII - Tortious Interference of Malicious Intent
    Count IX - Sabotage of Plaintiff's Immigration Process

Plaintiff seeks varied forms of injunctive relief, including changing his immigration

---

[1]Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

status, and money damages.

Before the Court is defendant's motion to dismiss. (Doc. 5). Plaintiff filed a response. (Doc. 6). Defendant filed a reply. (Doc. 7). Plaintiff filed a supplemental brief. (Doc. 8). The matter is ready for decision. For the reasons that follow, defendant's motion will be granted and the case will be dismissed.

## II. Background

Plaintiff was employed by ALPAC, Inc. to perform database computer work . ALPAC, Inc. assigned Plaintiff to perform this work for its customer the University of Michigan (University). At some point in 2014, plaintiff received an offer from the University for employment which was contingent upon plaintiff receiving a green card. On July 21 , 2015 , the University received an email from Al-Azhar F. Pacha, the President of ALPAC, Inc. notifying the University that plaintiff was angry that ALPAC had stopped processing its request for a green card for plaintiff, and that in response plaintiff had made "direct threats" to ALPAC. As a result , ALPAC terminated plaintiff s employment. Subsequently, in July of 2015, the University withdrew its pre-existing contingent job offer to plaintiff in light of ALPAC's actions.

## III. Legal Standard

A Rule 12(b)(6) motion tests the sufficiency of a plaintiff's pleading. The Rule requires that a complaint "contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)(internal citation omitted). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

Id. "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662; 129 S. Ct. 1937, 1949 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation."

When reviewing pro se papers, the court must employ standards less stringent than if the complaint had been drafted by counsel. Haines v. Kerner, 404 U.S. 519 (1972). However, under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, ––U.S. ––––, ––––, 129 S.Ct. 1937, 1949 (2009). "Pro se plaintiffs are not automatically entitled to take every case to trial." Price v. Caruso, 451 F.Supp.2d 889, 893 (E.D. Mich. 2006) (quoting Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir.1996)).

## IV. Analysis

Defendant says that all of plaintiff's claims are barred by the Eleventh Amendment.[2] The Eleventh Amendment, as interpreted by the Supreme Court, bars

---

[2] In addition to the Eleventh Amendment, there are other grounds for dismissing at least some of plaintiff's claims. For instance, plaintiff has alleged violations of criminal statutes. Criminal statutes do not provide plaintiff with a private cause of action. See Kafele v. Frank & Wooldridge Co., 180 F. App'x 307, 308–09 (6th Cir.2004) (stating that a private citizen plaintiff "has no authority to initiate a federal criminal prosecution of the defendants for their alleged unlawful acts"). Additionally, in Count VI, plaintiff apparently asks the Court to find the University in contempt of court based upon the University 's response to subpoenas issued to the University by Plaintiff in a state court case entitled Viggers v. Viggers, Case No. 15-799-CZ in which plaintiff is apparently suing his stepmother for defamation arising out of his employment with ALPAC. Because any actions by the University were taken in another case and not in the Court's presence, there is no basis for a contempt violation. See Vaughn v City of Flint, 752 F.2d 1160 (6th Cir. 1985)

suits against a State or its agencies or employees acting in their official capacity, unless Congress has abrogated its sovereign immunity or the state has expressly waived it. Virginia Office for Protection & Advocacy v. Stewart, ––––U.S. ––––, 131 S.Ct. 1632, 1637–38, 179 L.Ed.2d 675 (2011). This sovereign immunity bars not only federal constitutional claims against state agencies but ancillary state law claims, as well. See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 120–21, 104 S.Ct. 900, 79 L.Ed.2d 67 (1983) ("This constitutional bar applies to pendent claims as well.").

The Eleventh Amendment immunity bars recovery of money damages under 42 U.S.C. § 1983 against state officials sued in their official capacities. Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); McKay v. Thompson, 226 F.3d 752, 757 (6th Cir. 2000) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 70–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). The Eleventh Amendment does permit prospective injunctive relief against state officials acting in their official capacities. McKay, 226 F.3d at 757(citing Will, 491 U.S. at 70–71, 109 S.Ct. 2304).

Here, defendant - the Board of Regents of the University of Michigan - is an arm of the State of Michigan, and hence is cloaked with sovereign immunity. Estate of Ritter v. University of Michigan, 851 F.2d at 850–51. This immunity has not been waived. Therefore, the Eleventh Amendment precludes plaintiff's claims to the extent he seeks money damages against any of the defendants in their official capacities.

Plaintiff seems to suggest that the Eleventh Amendment does not apply because he is seeking prospective injunctive and declaratory relief against the defendants in their official capacities. The form of relief plaintiff seeks is not clear. It is not enough to say

that prospective injunctive relief is being sought; rather, plaintiff must describe the form of relief which must be plausible in light of the allegations in the complaint. Plaintiff fails to do so. Thus, the Eleventh Amendment bars plaintiff's claims.

Plaintiff appears to argue that his claim under the Fair Credit Reporting Act (FCRA) is not barred by the Eleventh Amendment, citing Executive Order 2009-35 and arguing that this order waives sovereign immunity for a FCRA. This argument is not well taken.

Plaintiff argues that Executive Order 2009-35 waives sovereign immunity for claims under the FCRA. The Executive Order does not provide any indication that the State is waiving its sovereign immunity or indicating an intention to subject itself to suit in federal court. The Executive Order states in relevant part:

> A. The Michigan Economic Recovery office is created within the Executive Office of the Governor. The authority, powers, duties, and functions of the Office, including but not limited to, budgeting, procurement, and related management functions, shall be performed under the direction and supervision of the Governor . . ..
> C. The Office shall do all of the following: . . .
> 2. Assist in assuring that the federal funds received by this state under the ARRA are allocated and invested in a manner consistent with applicable state and federal law, including, but not limited to, each of the following: . . .
>    g. Fair Credit Reporting Act, Public Law 91-508, 15 USC 1681 to 168 lx.

The Executive Order merely provides that the Michigan Economic Recovery Office, not a federal court, is responsible for assuring that federal funds received under the American Recovery and Reinvestment Act of 2009 (ARRA) were allocated and invested in accordance with several federal laws, including the FCRA. The Executive Order does not provide the express waiver for suit in federal court that the U.S. Supreme Court required in Port Authority.

Moreover, as defendant points out, the Michigan Economic Recovery Office, the

entity created by executive order 2009-35 to assure that ARRA funds were invested appropriately has been disbanded with the ending of ARRA funding. In 2010, in light of the ending of most funding under ARRA, MCLA 18.442 transferred the Michigan Recovery Economic Office from the Governor's office to the State Budget Office. A current organizational chair of the State Budget Office does not include the Michigan Economic Recovery Office. Thus, even if Executive Order 2009-35 is viewed as a waiver of sovereign immunity such a waiver ended with the cessation of ARRA funding and the abolishment of the Michigan Economic Recovery office.

Finally, even if the Eleventh Amendment was not a bar to plaintiff's FCRA claim, it is still subject to dismissal for failure to state a claim. In paragraph 82 of the complaint, plaintiff alleges that the University relied on information from ALPAC in determining that it would not hire Plaintiff. The FCRA specifically excludes information received directly from a prior employer from the definition of a consumer report which is required for a claim under the statute. See <u>Owner-Operator Independent Drivers Association, Inc. v. USIS Commercial Services, Inc.</u>, 537 F.3d 1184, 1192 (10th Cir. 2008) (reference reports from prior employers were not consumer reports under the FCRA).

As to the "Doe Defendants," the complaint fails to raise any allegations against these defendants. Plaintiff suggests that his failure to failure to allege any claims against University employees on his lack of information. However, as defendant notes, plaintiff has had an opportunity in lawsuits he filed in state court against others to the depositions of three University employees and has been supplied with hundreds of documents by the University. Thus, his argument that he needs information in order to

identify the Doe Defendants rings hollow. The "Doe Defendants" must be dismissed.

IV. Conclusion

For the reasons stated above, defendant's motion is GRANTED. This case is DISMISSED.

SO ORDERED.

                                                S/Avern Cohn
                                                AVERN COHN
                                                UNITED STATES DISTRICT JUDGE

Dated: March 29, 2016
       Detroit, Michigan